UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA


MARGARET ALEXANDRA ALEXANDER,

Plaintiff,

v.

MONTGOMERY COUNTY COMMUNITY SUPERVISION & CORRECTIONS
DEPARTMENT,

TEXAS DEPARTMENT OF FAMILY AND PROTECTIVE SERVICES (DFPS),

MONTGOMERY COUNTY DISTRICT ATTORNEY'S OFFICE,

MONTGOMERY COUNTY SHERIFF'S DEPARTMENT,

Defendants.

Case: 1:25-cv-02283　　JURY DEMAND
Assigned To : Unassigned
Assign. Date : 6/27/2025
Description: Pro Se Gen. Civ.　　(F-DECK)

Civil Action No. _____


COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF UNDER 42 U.S.C. §
1983, THE AMERICANS WITH DISABILITIES ACT (ADA), AND THE
REHABILITATION ACT


COMES NOW Plaintiff **Margaret Alexandra Alexander**, pro se, and respectfully states:


**I. INTRODUCTION**

1

1. Plaintiff brings this civil rights action pursuant to 42 U.S.C. § 1983, Title II of the Americans with Disabilities Act (42 U.S.C. § 12131 et seq.), and Section 504 of the Rehabilitation Act (29 U.S.C. § 794), seeking emergency declaratory and injunctive relief to halt a sustained and unlawful course of conduct by state actors operating under color of Texas law. The named Defendants have engaged in a coordinated and constitutionally impermissible pattern of retaliation, discriminatory denial of reasonable accommodations, and obstruction of Plaintiff's federally protected access to post-conviction relief. These actions violate clearly established rights secured by the ADA, Rehabilitation Act, and the Due Process and Equal Protection Clauses of the Fourteenth Amendment, and they now require immediate federal intervention to prevent irreparable harm.

2. This complaint arises from a continuous and escalating pattern of unlawful and retaliatory conduct by state actors in Montgomery County, Texas, constituting an orchestrated deprivation of federally protected rights under color of law. Plaintiff has been subjected to targeted enforcement actions strategically timed in response to protected legal filings; unauthorized and retaliatory dissemination of sealed habeas corpus affidavits—including sworn testimony from a minor child—by the District Attorney's Office to an active criminal defendant affiliated with the underlying case; unlawful surveillance and intimidation by local law enforcement agents; and repeated obstruction of post-conviction remedy through docket tampering, record manipulation, and administrative sabotage. Additionally, the state's child welfare authorities have carried out custody transfers and interstate placements in violation of Titles IV-B and IV-E of the Social Security Act, without notice, hearing, or lawful process. Plaintiff's witnesses—some of whom are minors—have been subjected to retaliatory intimidation and direct questioning by defendants named in the underlying matter. These acts

have been formally reported to the state court, yet no remedial or protective action has been taken, further enabling a hostile environment of coercion and suppression. These coordinated actions represent not isolated misconduct, but a pattern and practice of state-sponsored retaliation, obstruction, and witness tampering. Together, they form an unconstitutional apparatus of coercion that systematically undermines access to the courts, chills protected speech, violates due process, and disables Plaintiff's federally guaranteed rights under the ADA, Rehabilitation Act, and the U.S. Constitution. Immediate federal injunctive intervention is required to prevent further irreparable harm and to halt the state's ongoing weaponization of public authority against a disabled, pregnant litigant actively seeking lawful redress.

3.  3. Plaintiff urgently seeks preliminary injunctive relief under federal authority to prevent imminent and irreparable harm to her physical safety, high-risk pregnancy, and constitutionally protected parental rights. Plaintiff is currently 30 weeks pregnant with a child diagnosed in utero with a congenital heart defect, and both she and her minor children have expressed credible, well-substantiated fear for their lives due to escalating retaliatory actions by state actors. This request follows formal civil rights disclosures submitted to the U.S. Department of Justice and the Federal Bureau of Investigation and is necessitated by an immediate retaliatory response that confirms a direct nexus between protected federal activity and subsequent adverse enforcement. The danger is not theoretical—it is active, compounding, and life-threatening. Absent urgent federal intervention, Plaintiff faces irreversible injury to her person, pregnancy, family integrity, and access to lawful adjudication under 42 U.S.C. § 1983, Title II of the ADA, and Section 504 of the Rehabilitation Act.

## II. JURISDICTION AND VENUE

1. This Court has subject matter jurisdiction under 28 U.S.C. § 1331 (federal question), 28
   U.S.C. § 1343(a)(3) (civil rights enforcement), 28 U.S.C. § 2201 (declaratory relief), and 42
   U.S.C. § 12133 (ADA enforcement), as this action arises under the Constitution and laws of
   the United States.

2. Venue is proper in the United States District Court for the District of Columbia pursuant to
   28 U.S.C. § 1391(b)(2), as a substantial part of the operative events, harm, and ongoing
   oversight efforts involve communications and protected disclosures made to federal agencies
   headquartered in this district—including the United States Department of Justice, Civil
   Rights Division, and the Federal Bureau of Investigation. Plaintiff's pursuit of injunctive
   relief stems directly from retaliatory consequences that followed those protected disclosures,
   anchoring venue in this jurisdiction.

## III. PARTIES

1. *Plaintiff Margaret Alexandra Alexander* is a resident of Montgomery County, Texas, and a
   qualified individual with a disability as defined by the Americans with Disabilities Act, 42
   U.S.C. § 12102. She is currently under state probation supervision and is actively pursuing
   habeas corpus relief in Cause No. 23-04-05724, which is now under formal judicial review
   based on newly presented exculpatory medical evidence and a claim of *fraud on the court*
   involving forensic suppression and prosecutorial misconduct. Plaintiff has submitted

extensive forensic documentation, sworn affidavits, and disability-related records in support of her innocence and legal redress. As a disabled, high-risk pregnant mother, she has been subjected to escalating and coordinated retaliation for exercising her federally protected rights, including the submission of formal civil rights complaints to the U.S. Department of Justice and the Federal Bureau of Investigation.

2. *Defendant Montgomery County Community Supervision & Corrections Department (CSCD)* is a governmental entity operating under Texas state authority, responsible for Plaintiff's probationary supervision. CSCD has engaged in targeted and retaliatory enforcement actions, including an unannounced, unauthorized, and hostile visit to Plaintiff's residence—occurring within hours of Plaintiff's protected filings with the U.S. Department of Justice. During this unprecedented event, probation personnel initiated what amounted to an attempted custodial interrogation absent counsel or cause, despite no violations and more than a year of compliant supervision. CSCD has willfully refused to implement—let alone acknowledge— multiple formal ADA accommodation requests submitted by Plaintiff, despite ample documentation of her qualifying disability and a medically verified high-risk pregnancy involving a congenital heart defect in utero. This ongoing noncompliance constitutes a flagrant violation of Title II of the ADA and Section 504 of the Rehabilitation Act and exposes the department to federal liability for deliberate indifference. Moreover, Plaintiff is being subjected to an unrelenting regime of punitive supervision conditions—including compulsory and frequent urinalysis testing, mandatory class attendance, and coerced financial expenditures—each of which imposes extreme physical strain, economic hardship, and logistical impossibility under her present medical circumstances. These enforcement measures serve no rehabilitative purpose and instead operate as retaliatory mechanisms

designed to punish the exercise of federally protected rights and coerce silence amid pending federal oversight.

3.  8. Defendant Texas Department of Family and Protective Services (DFPS) is a Texas state agency operating under color of law and receiving substantial federal funding through Titles IV-B and IV-E of the Social Security Act. As such, it is federally bound to comply with statutory mandates concerning due process, family reunification, ICPC safeguards, and the protection of minor children from harm. DFPS has willfully and repeatedly violated these obligations by executing unlawful cross-jurisdictional placements of Plaintiff's minor children while Plaintiff retained lawful custody, doing so without notice, hearing, court findings, or ICPC clearance as required by federal law. These actions constitute direct violations of 42 U.S.C. §§ 671(a)(15), 675(5), and binding federal placement protocol.

4.  Moreover, DFPS has facilitated retaliatory child welfare actions by placing Plaintiff's children with individuals specifically named in sealed habeas affidavits as abusive, coercive, or otherwise unfit—despite the agency's awareness of those risks and despite the availability of safer, willing kinship alternatives proposed in writing. These placements have resulted in verified physical injury to one child, repeated exposure of minors to environments under investigation, and emotional trauma documented in sworn affidavits.DFPS's conduct reflects not isolated negligence but a coordinated, retaliatory misuse of federal child protection authority, calculated to endanger Plaintiff's children and suppress her access to judicial remedy. The agency's continued disregard for federally mandated safeguards places the children at imminent risk of further harm and renders DFPS liable under 42 U.S.C. § 1983 for civil rights deprivations, procedural sabotage, and federally prohibited retaliation. Immediate federal intervention is required to prevent irreversible injury.

5.  9. Defendant Montgomery County District Attorney's Office is a prosecutorial entity operating under color of state law and responsible for both the original prosecution and ongoing post-conviction posture in Plaintiff's criminal matter. The office has engaged in systemic misconduct, including the knowing suppression of exculpatory forensic evidence, Brady violations, and the continued concealment of expert medical reports confirming Plaintiff's innocence. Despite being notified of fraud on the court grounds currently under habeas corpus review, the District Attorney's Office has taken no corrective action and instead escalated its retaliatory posture. Most egregiously, the office has unlawfully disseminated sealed affidavits authored by minor witnesses—including Plaintiff's own children—to adverse parties in the underlying case, resulting in witness intimidation, unauthorized disclosure of confidential material, and endangerment of minors. These actions constitute prosecutorial misconduct and deliberate retaliation against protected legal activity, in violation of the U.S. Constitution, 42 U.S.C. § 1983, and federal safeguards governing post-conviction due process.

6.  10. Defendant Montgomery County Sheriff's Department is a Texas law enforcement agency operating under color of state law and engaged in sustained surveillance, retaliatory enforcement actions, and unconstitutional interference with Plaintiff's protected legal process. The Sheriff's Department has repeatedly inserted itself into Plaintiff's post-conviction proceedings through extrajudicial intimidation tactics, including targeted drive-by monitoring, pattern surveillance surrounding key legal filings, and cooperation with other retaliatory agencies in executing psychologically coercive presence without lawful basis. These actions coincide with protected federal activity, including ADA disclosures and habeas

corpus submissions, thereby establishing a direct causal nexus between Plaintiff's exercise of constitutional rights and retaliatory law enforcement response.

7. The Department has further failed to intervene or take corrective action upon notice that minor witnesses in the case—whose sealed affidavits contain allegations of abuse and misconduct—are being exposed to potential coercion and third-party intimidation, some of which directly implicate individuals with law enforcement ties. Such conduct constitutes a knowing violation of Plaintiff's rights under the First, Fourth, Eighth, and Fourteenth Amendments, and exposes the Department to liability under 42 U.S.C. § 1983 for state-sponsored retaliation, civil rights suppression, and failure to protect both the Plaintiff and her minor children from foreseeable harm.

## IV. FACTUAL ALLEGATIONS

1. Plaintiff is currently pursuing post-conviction relief through a state habeas corpus petition filed in Montgomery County, Texas (Cause No. 23-04-05724), asserting multiple federal violations, including but not limited to: *Brady v. Maryland*, 373 U.S. 83 (1963) suppression of forensic exoneration evidence; violations of the Americans with Disabilities Act and Rehabilitation Act; coerced plea under medical duress; and fraud on the court supported by sworn affidavits and expert documentation.

2. Since initiating this protected judicial proceeding—and following formal complaints submitted to the U.S. Department of Justice and the Federal Bureau of Investigation— Plaintiff has experienced an immediate and escalating campaign of retaliation, including:

- **Coerced Medical Seizure, ADA Retaliation, and Postpartum Cruelty Under Color of Law**

  State officials, acting under color of law, coerced Plaintiff—then 1.5 months postpartum—into a nonconsensual blood draw by denying her access to legal counsel, bathroom facilities, and spousal comfort during over eight hours of custodial interrogation. As a result, Plaintiff—healing from vaginal trauma—was forced to urinate on herself in state custody, pleading for medical and legal relief. These acts, which occurred while Plaintiff was medically vulnerable and grieving, constitute cruel and unusual punishment, an unlawful search and seizure, denial of due process, and deliberate ADA retaliation.

Federal Violations Cited:

- *Rochin v. California*, 342 U.S. 165 (1952) – bodily coercion that "shocks the conscience" violates due process.

- *Hope v. Pelzer*, 536 U.S. 730 (2002) – cruel punishment inflicted with deliberate indifference.

- *Payton v. New York*, 445 U.S. 573 (1980) – warrantless seizures of the body are per se unconstitutional.

- *Miranda v. Arizona*, 384 U.S. 436 (1966) – custodial interrogation without access to counsel violates the Fifth and Sixth Amendments.

- *Tennessee v. Lane*, 541 U.S. 509 (2004) – ADA Title II protections apply to law enforcement and judicial processes.

- *United States v. Lanier*, 520 U.S. 259 (1997) – officials violating clearly established federal rights are liable under § 1983.

- **Forced Reenactment Constituting Psychological Torture and Constitutional Violation**

Plaintiff was forcibly compelled to reenact her infant son's death using a lifeless baby doll just hoursafter his passing, despite her repeated pleas to stop. The reenactment occurred without legal counsel, psychological supervision, or ADA accommodation, and triggered such severe trauma that Plaintiff lost consciousness. These actions served no investigatory necessity and constituted psychological torture, cruel punishment, and deliberate infliction of harm upon a grieving disabled mother.

Federal Violations Cited:

- *Hope v. Pelzer*, 536 U.S. 730 (2002) – gratuitous degradation with no penological justification is cruel and unusual punishment.

- *Rochin v. California*, 342 U.S. 165 (1952) – government conduct that "shocks the conscience" violates substantive due process.

- *Youngberg v. Romeo*, 457 U.S. 307 (1982) – due process includes protection from undue psychological harm in state custody.

- *Farmer v. Brennan*, 511 U.S. 825 (1994) – deliberate indifference to serious psychological harm violates constitutional protections.

- *Tennessee v. Lane*, 541 U.S. 509 (2004) – requires ADA accommodation even in criminal processes.

- *Jackson v. Bishop*, 404 F.2d 571 (8th Cir. 1968) – psychological torment by state actors is actionable under the Eighth Amendment.


- **Targeted Probation Enforcement as Retaliatory Intimidation Following Protected Federal Speech**

Within hours of Plaintiff's filing of protected federal disclosures and intent-to-sue notices, state probation officers initiated an unannounced, invasive site visit—despite Plaintiff's clean compliance record and absence of any violations. This action, deliberately timed and executed while Plaintiff is classified as a high-risk pregnancy, had no legitimate law enforcement basis and served only to intimidate, inflict psychological distress, and interfere with Plaintiff's exercise of federally protected rights. The deliberate deployment of carceral supervision in response to constitutionally protected activity violates the First Amendment, constitutes unlawful retaliation under 42 U.S.C. § 1983 and § 12203, and places Plaintiff's medical condition in direct jeopardy—triggering both ADA protections and constitutional due process claims.

Federal Violations Cited:

- *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274 (1977) – adverse government action motivated even partly by protected expression constitutes unlawful retaliation.

- *Gagliardi v. Village of Pawling*, 18 F.3d 188 (2d Cir. 1994) – retaliation by local officials for protected conduct is actionable under § 1983.

- *Robinson v. City of Pittsburgh*, 120 F.3d 1286 (3d Cir. 1997) – retaliatory acts that chill protected activity or create psychological harm violate the First Amendment.

- *Tennessee v. Lane*, 541 U.S. 509 (2004) – reinforces that the ADA prohibits retaliatory treatment of disabled individuals in any public service context.

- *Duvall v. County of Kitsap*, 260 F.3d 1124 (9th Cir. 2001) – ADA retaliation claims are triggered by conduct designed to punish or obstruct access to rights, including timing-based intimidation.

- *Harlow v. Fitzgerald*, 457 U.S. 800 (1982) – government officials are liable under § 1983 when acting with knowledge of clearly established federal rights, including against retaliation and harassment tied to protected speech or filings.

- **Unlawful Dissemination of Sealed Minor Affidavits in Retaliation and Violation of Federal Privacy and Due Process**

  The District Attorney's Office knowingly and unlawfully disseminated sealed affidavits authored by minor witnesses to an adverse party—specifically, the original criminal complainant, who is also the alleged perpetrator of abuse and a materially interested actor in ongoing litigation. This disclosure violated the confidentiality protections afforded to child witnesses under federal and state law, constituted retaliation against protected testimonial activity, and exposed the minors to potential intimidation and harm. Such conduct subverts the integrity of sealed court proceedings, breaches judicial ethical obligations, and violates Plaintiff's and the minor's Fourteenth Amendment due process rights, as well as statutory protections under the Crime Victims' Rights Act and 42 U.S.C. § 1985(2).

  Federal Violations Cited:

- *Doe v. Gallinot*, 486 F. Supp. 983 (C.D. Cal. 1980) – disclosure of confidential information in state custody settings violates privacy and liberty interests protected by the Fourteenth Amendment.

- *Haddle v. Garrison*, 525 U.S. 121 (1998) – § 1985(2) prohibits retaliation or intimidation of witnesses in federal or state proceedings, including through indirect acts such as disclosure.

- *Jaffee v. Redmond*, 518 U.S. 1 (1996) – recognizes a federal privilege protecting confidential communications made during therapy or related sensitive contexts, extending to minor and trauma-exposed witnesses.

- *Whalen v. Roe*, 429 U.S. 589 (1977) – establishes a constitutional right to informational privacy, especially where disclosure could expose individuals to harm.

- *Smith v. Daily Mail Publishing Co.*, 443 U.S. 97 (1979) – reaffirms the state's heightened duty to protect the identity and privacy of minors involved in criminal proceedings.

- *United States v. Lanier*, 520 U.S. 259 (1997) – state actors are liable under § 1983 when violating clearly established federal protections through abusive or retaliatory conduct.

- **Retaliatory Psychological Harassment and Witness Tampering Through Threats and Unlawful Access to Confidential Filings**

  Plaintiff has been subjected to a sustained campaign of retaliatory psychological harassment by the original criminal complainant, Sara Murray, who has threatened Plaintiff's family members with false criminal allegations—including coercing Plaintiff's father by threatening to accuse him of causing the death of her unborn child unless he withdrew support for Plaintiff's legal efforts. These threats constitute federal witness tampering and obstruction of justice under 18 U.S.C. § 1512, and are indicative of an ongoing pattern of retaliatory interference in violation of 42 U.S.C. § 1985(2). Further, Sara Murray's continued access to sealed or confidential filings strongly suggests improper coordination with state actors, implicating prosecutorial misconduct, breach of privacy, and conspiracy under color of law to obstruct due process and chill protected legal advocacy.

  Federal Violations Cited:

- *United States v. Jackson*, 968 F.3d 624 (7th Cir. 2020) – threats designed to coerce witness silence or recantation constitute criminal witness tampering under 18 U.S.C. § 1512(b).

- *Haddle v. Garrison*, 525 U.S. 121 (1998) – § 1985(2) prohibits conspiracies to intimidate or retaliate against parties or witnesses in legal proceedings.

- *Dennis v. Sparks*, 449 U.S. 24 (1980) – private individuals acting in concert with state officials under color of law may be held liable for constitutional violations.

- *Briscoe v. LaHue*, 460 U.S. 325 (1983) – confirms witness retaliation and coercion violate due process when orchestrated to alter testimony or impede legal access.

- *Whitney v. California*, 274 U.S. 357 (1927) – government action that chills or suppresses lawful participation in legal advocacy or access to the courts violates fundamental constitutional protections.

- *United States v. Fulbright*, 105 F.3d 443 (9th Cir. 1997) – threatening family members to manipulate or obstruct legal proceedings constitutes a federal criminal offense under obstruction statutes.


- **Deliberate Denial of Federally Mandated ADA and Pregnancy-Related Accommodations Despite Known Medical Vulnerability**

  State actors have persistently denied Plaintiff's statutorily protected accommodations related to her diagnosed Autism Spectrum Disorder and high-risk pregnancy—despite having received multiple formal notices and medical records confirming her disability status and the presence of a serious in utero congenital heart defect. This sustained denial constitutes deliberate indifference to federally protected medical needs and disability rights in violation of Title II of the Americans with Disabilities Act (42 U.S.C. § 12132), Section 504 of the Rehabilitation Act (29 U.S.C. § 794), and the Due Process Clause of the Fourteenth Amendment. Such conduct not only endangers Plaintiff's health and the viability of her pregnancy but also reflects institutionalized discrimination and actionable civil rights violations under 42 U.S.C. § 1983.

  Federal Violations Cited:

- *Tennessee v. Lane*, 541 U.S. 509 (2004) – Title II of the ADA mandates that public entities provide equal access to court services and must accommodate disabilities during legal proceedings.

- *Duvall v. County of Kitsap*, 260 F.3d 1124 (9th Cir. 2001) – holds that deliberate indifference to known disability accommodation needs constitutes a violation of the ADA and § 1983.

- *U.S. v. Georgia*, 546 U.S. 151 (2006) – confirms that conduct violating both the ADA and constitutional rights may be redressed through § 1983.

- *Farmer v. Brennan*, 511 U.S. 825 (1994) – establishes that deliberate indifference to serious medical conditions in state custody settings violates the Eighth and Fourteenth Amendments.

- *Alexander v. Choate*, 469 U.S. 287 (1985) – protects qualified individuals from discriminatory denial of meaningful access to public programs and services based on disability.

- *Sch. Bd. of Nassau Cnty. v. Arline*, 480 U.S. 273 (1987) – failure to provide reasonable accommodations to individuals with medical conditions is discriminatory under federal disability law.


- **Endangerment, Coercion, and Interstate Placement Violations Involving Minor Witnesses**
  Plaintiff's minor children—key witnesses in ongoing civil rights litigation—have been knowingly exposed to individuals named in sworn abuse affidavits, including the original criminal complainant, despite multiple formal notices, documented history of violence, and the availability of safe kinship alternatives. These children were also unlawfully placed across state lines without compliance with the **Interstate Compact on the Placement of Children (ICPC)**, in direct violation of federal law and child welfare policy. Such placement occurred without

Plaintiff's consent, proper court orders, or required home studies and approvals, constituting **illegal interstate transfer** and endangerment.

The refusal of the Texas Department of Family and Protective Services (DFPS), in coordination with other agencies, to act on these violations—despite repeated formal warnings and available kinship placements—constitutes deliberate indifference to the safety and civil rights of both Plaintiff and her children. This pattern of misconduct constitutes child endangerment, intimidation of federal witnesses, and systemic obstruction of justice. These actions violate the Fourteenth Amendment (due process and bodily integrity), the ADA and Section 504 (failure to accommodate a disabled mother's family rights), and Titles IV-B and IV-E of the Social Security Act. They are also actionable under 42 U.S.C. §§ 1983 and 1985(2).

Federal Violations and Case Law:

- *Nicini v. Morra*, 212 F.3d 798 (3d Cir. 2000): Government actors may be held liable under § 1983 for placing children in known dangerous conditions.

- *Doe v. Heck*, 327 F.3d 492 (7th Cir. 2003): Permitting continued exposure of children to abusers violates due process and can constitute state-created danger.

- *Santosky v. Kramer*, 455 U.S. 745 (1982): Recognizes the constitutional integrity of the parent-child relationship and requires rigorous due process.

- *Lassiter v. Dep't of Soc. Servs.*, 452 U.S. 18 (1981): Confirms a parent's due process rights in custody-related proceedings.

- *Valmonte v. Bane*, 18 F.3d 992 (2d Cir. 1994): Failure to act on credible allegations of harm violates constitutional guarantees of protection.

- *42 U.S.C. § 671(a)(15)*: States must prioritize child safety and kinship placements before initiating foster or out-of-state arrangements.

- *42 U.S.C. § 675(5)(A)*: Mandates review and oversight of child placements, which DFPS failed to ensure here.

- *ICPC Articles III & V*: Require legal safeguards and court approvals for interstate child placements. Bypassing ICPC violates federal standards and strips the sending state and natural parent of legal protections.

- *Whalen v. Roe*, 429 U.S. 589 (1977): Reinforces familial privacy as a Fourteenth Amendment liberty interest, infringed when states unilaterally transfer or expose children to danger.

These acts collectively establish a sustained pattern of unconstitutional retaliation, deliberate indifference to serious and life-threatening medical conditions, and systemic obstruction of federally protected legal remedy, in direct violation of the First, Fourth, Eighth, and Fourteenth Amendments to the United States Constitution. Rather than addressing the grave constitutional, forensic, and disability-based claims raised through proper judicial channels, Texas state actors have engaged in a coordinated campaign of surveillance, coercion, and procedural sabotage—with the clear intent to chill the exercise of federal rights and intimidate both Plaintiff and her supporting witnesses. The timing, intensity, and nature of these actions demonstrate not isolated misconduct, but a state-sanctioned apparatus of suppression operating under color of law, requiring immediate federal intervention.

## V. CLAIMS FOR RELIEF

## COUNT I – VIOLATION OF 42 U.S.C. § 1983

1. Defendants, acting under color of Texas state law, have engaged in a deliberate, coordinated, and unconstitutional campaign to deprive Plaintiff of her clearly established federal rights—including but not limited to:

• her **First Amendment** right to petition the government and access courts free from retaliation;

• her **Fourteenth Amendment** rights to due process, equal protection, and familial integrity; and

• her **Eighth Amendment** right to be free from state-inflicted harm and deliberate indifference to serious medical risk.

2. Defendants have further obstructed Plaintiff's ongoing post-conviction habeas corpus litigation, interfered with protected communications to federal oversight agencies, and subjected her to retaliatory surveillance, intimidation, and public authority misuse—all of which constitute actionable violations under *42 U.S.C. § 1983*. See *Buckley v. Fitzsimmons*, 509 U.S. 259 (1993) (prosecutors not immune when acting in an investigatory or administrative capacity); *Clemons v. Waller*, 82 F.3d 418 (5th Cir. 1996) (retaliation against prisoner for exercising legal rights violates First Amendment); Gagliardi v. Village of Pawling, 18 F.3d 188 (2d Cir. 1994) (recognizing that retaliatory acts such as heightened supervision or enforcement tied to protected speech are actionable under § 1983).

Furthermore, Defendants' conduct—including the coerced reenactment involving a baby doll simulation of Plaintiff's deceased infant son, coerced custodial urine event, and coordinated obstruction of minor witness protections—shocks the conscience and constitutes state-sanctioned psychological torture. Such acts violate clearly established constitutional protections under *Rochin v. California*, 342 U.S. 165 (1952), *Hope v. Pelzer*, 536 U.S. 730 (2002), and *Youngberg v. Romeo*, 457 U.S. 307 (1982). The forced participation in trauma-inducing simulations without counsel, while postpartum and disabled, serves no legitimate government interest and is

actionable under *United States v. Lanier*, 520 U.S. 259 (1997), which permits § 1983 claims for conduct under color of law that violates bodily integrity and due process.

These actions are not isolated errors or discretionary misconduct but reflect a systemic abuse of state power designed to suppress protected legal activity, endanger Plaintiff and her children, and prevent judicial accountability. Plaintiff has suffered and continues to face irreparable harm as a direct and proximate result of Defendants' unconstitutional conduct.

3. Defendants also unlawfully disseminated sealed affidavits to adverse parties, permitted retaliation by a known abuser against Plaintiff's witnesses and family, and ignored the ICPC framework governing interstate child placements—all of which collectively constitute obstruction of justice, witness intimidation, and systemic due process sabotage, actionable under 42 U.S.C. §§ 1983 and 1985(2).

## COUNT II – VIOLATION OF TITLE II OF THE AMERICANS WITH DISABILITIES ACT (ADA)

1. Plaintiff is a qualified individual with a disability under the ADA, including a medically diagnosed autism spectrum disorder and a federally recognized high-risk pregnancy involving an in utero heart defect.

2. Despite repeated written, medical, and procedural notices, Defendants—each acting under color of law and in their official capacities—have systematically failed to provide reasonable modifications or accommodations as required by *42 U.S.C. § 12132* and its implementing regulations.

These failures include, but are not limited to:

- Refusal to acknowledge or respond to ADA accommodation requests submitted to probation authorities, CPS caseworkers, and court officers;

- Failure to adjust supervision demands or communication protocols in light of Plaintiff's autism-related processing differences;

- Total disregard for documented medical restrictions related to Plaintiff's pregnancy, including disregard for a congenital heart defect diagnosis affecting the unborn child; and

- Enforcement of punitive and hazardous procedures—such as unannounced site visits, physical compliance checks, and intensive program demands—without regard for Plaintiff's medical limitations or disability status.

3. Defendants' actions amount to discriminatory exclusion from services, benefits, and protections administered by public entities, in direct violation of *Title II of the ADA*, and pose an ongoing threat of irreparable harm to Plaintiff's health, access to justice, and physical safety. See *Gorman v. Bartch*, 152 F.3d 907 (8th Cir. 1998) (holding that Title II of the ADA applies to arrests and custodial conduct by public officials); *Duvall v. County of Kitsap*, 260 F.3d 1124 (9th Cir. 2001) (finding that deliberate indifference to accommodation requests constitutes actionable ADA discrimination where the need is obvious or formally requested and no meaningful steps are taken).

4. Plaintiff was also denied disability-related accommodations during high-stakes legal processes, including during a medically coercive detention, a post-mortem reenactment that resulted in loss of consciousness, and state-led visitations from complainants who threatened her support network. These denials placed her life and fetal safety at serious risk, and constitute intentional discrimination under Duvall v. County of Kitsap, 260 F.3d 1124 (9th Cir. 2001) and

Gorman v. Bartch, 152 F.3d 907 (8th Cir. 1998), which confirm that failure to act on known

accommodation needs constitutes a violation of the ADA.

## COUNT III – VIOLATION OF SECTION 504 OF THE REHABILITATION ACT

1. Defendants are public entities and subdivisions of the State of Texas that receive federal

financial assistance and are therefore bound by the non-discrimination mandates of *Section 504*

*of the Rehabilitation Act*, codified at *29 U.S.C. § 794*.

2. Plaintiff is an individual with a qualified disability—namely, autism spectrum disorder and a

medically documented high-risk pregnancy—whose impairments substantially limit major life

activities and necessitate reasonable accommodations.

3. Defendants, despite actual and constructive notice of Plaintiff's disability status and medical

vulnerabilities, have intentionally denied her meaningful access to state-supervised services,

including probationary oversight, legal process participation, and child welfare procedures.

Specifically, Defendants:

- Failed or refused to implement ADA-mandated adjustments to Plaintiff's supervision terms,
  communication methods, or program requirements;

- Imposed physically and cognitively burdensome conditions with no regard for Plaintiff's
  autism-related limitations or high-risk prenatal care needs;

- Enabled coercive retaliation through child welfare channels and law enforcement
  mechanisms without accommodating Plaintiff's disability-related barriers to legal response
  and defense.

These actions constitute discrimination "solely by reason of" Plaintiff's disability in violation of

*Section 504*, and have caused and continue to cause serious harm, including psychological

trauma, physical endangerment, and obstruction of Plaintiff's ability to engage in legally protected activity.

See *Alexander v. Choate*, 469 U.S. 287 (1985) (holding that facially neutral policies may violate Section 504 when they have a disparate impact on individuals with disabilities and deny meaningful access to federally funded services).

4. The retaliatory conduct described herein—including but not limited to denial of ADA accommodations, coerced custodial trauma, and interference with witness protections—occurred in federally funded state settings. Under Alexander v. Choate, 469 U.S. 287 (1985), policies or omissions that have a disparate impact on disabled persons and result in the denial of meaningful access to public programs violate Section 504. Here, Plaintiff was excluded from safe, lawful, and accessible legal proceedings, denied kinship advocacy, and subjected to pregnancy-endangering retaliation solely due to her disability and the exercise of federally protected rights.

## VI. PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully demands that this Court issue the following relief pursuant to its equitable and injunctive authority:

**A.** A Declaratory Judgment that the acts and omissions of the Defendants—individually and collectively—constitute ongoing violations of:

- Title II of the Americans with Disabilities Act (42 U.S.C. § 12131 et seq.), by failing to provide reasonable accommodations and engaging in retaliation against Plaintiff for asserting her rights;

- Section 504 of the Rehabilitation Act (29 U.S.C. § 794), by denying Plaintiff meaningful access to publicly funded programs and protections on the basis of her disabilities;

- Plaintiff's clearly established constitutional rights under the First (retaliation for protected speech and court access), Fourth (unlawful search and bodily seizure), Sixth (denial of counsel), Eighth (cruel and unusual punishment), and Fourteenth Amendments (due process and equal protection), as enforceable through 42 U.S.C. § 1983, § 1985(2) (witness interference), and § 12203 (ADA retaliation).

**B. Immediate Preliminary and Permanent Injunctive Relief, including but not limited to:**

- Enjoining all Defendants, and those acting in concert with them, from engaging in any further acts of intimidation, retaliation, surveillance, harassment, or dissemination of sealed or confidential materials—including actions targeting Plaintiff's minor children or known witnesses, in violation of federal witness protection and anti-retaliation laws;

- Requiring the immediate implementation of federally mandated accommodations under the Americans with Disabilities Act and Rehabilitation Act—specifically tailored to Plaintiff's diagnosed autism spectrum disorder and medically documented high-risk pregnancy—including but not limited to:

  o Modification of probation terms and communication protocols;

  o Elimination of physically or psychologically harmful requirements inconsistent with medical directives or disability limitations;

  o Clear designation of an ADA coordinator within each involved agency to oversee compliance;

- Halting all cross-jurisdictional child custody placements or transfers unless and until full compliance with the Interstate Compact on the Placement of Children (ICPC), Titles IV-

B and IV-E of the Social Security Act, and applicable federal procedural safeguards is demonstrated and documented to this Court's satisfaction;

- Ordering the preservation of all records, communications, surveillance materials, witness contact logs, ICPC-related documentation, and decision-making files relevant to this matter or any overlapping federal investigation, including materials housed within DFPS, CSCD, the District Attorney's Office, and local law enforcement.

## C. An Award of Compensatory and Statutory Damages:

- Awarding Plaintiff compensatory damages for the physical, psychological, and constitutional injuries sustained as a direct result of Defendants' unlawful conduct, including:
  - o Prolonged ADA discrimination and denial of medical accommodation;
  - o Retaliatory probation enforcement and obstruction of court access;
  - o Emotional distress arising from the endangerment of minor children and exposure to retaliatory threats;
  - o Violations of Plaintiff's clearly established rights under the First, Fourth, Sixth, Eighth, and Fourteenth Amendments.
- Awarding all statutory damages available under:
  - o **42 U.S.C. § 1983** (civil rights violations under color of law),
  - o **42 U.S.C. § 12203** (ADA anti-retaliation),
  - o **29 U.S.C. § 794a** (Rehabilitation Act remedies),
  - o **42 U.S.C. §§ 671–679c** (Titles IV-B and IV-E enforcement via incorporated federal standards),
  - o And related equitable doctrines for ongoing harm.

**D. Costs of Suit and Attorneys' Fees Under Federal Law:**

- Awarding Plaintiff all litigation costs and attorneys' fees to the extent authorized under:

    o **42 U.S.C. § 1988** (prevailing party fee-shifting for civil rights claims),

    o **42 U.S.C. § 12205** (ADA attorneys' fees),

    o **29 U.S.C. § 794a(b)** (Rehabilitation Act attorneys' fees),

    o And any other applicable provisions under federal law permitting recovery of costs, expert witness fees, and court-authorized investigative resources.

**E. Expedited Judicial Hearing and Emergency Docketing:**

- An order expediting this matter for immediate hearing pursuant to the Court's equitable powers and Rule 65 of the Federal Rules of Civil Procedure, based on:

    o The ongoing and irreparable harm to Plaintiff's physical and psychological safety;

    o Her federally documented high-risk pregnancy, including an in utero congenital heart defect;

    o The pattern of retaliatory and unlawful conduct by Defendants that continues to escalate in response to Plaintiff's protected legal activity;

    o The public interest in halting further constitutional violations and preventing additional endangerment of minor witnesses;

    o And the urgent necessity for federal oversight where state remedies have proven inadequate or obstructed.

**F. An order requiring federal monitoring or DOJ referral for investigation into the retaliatory and discriminatory practices of the named agencies, pursuant to 28 C.F.R. Part 35, Subpart F.**

This matter warrants emergency treatment due to its convergence of ADA violations, civil rights deprivations, and imminent threats to maternal and child health—requiring this Court's immediate intervention under controlling federal precedent.

## VII. CONCLUSION

Plaintiff respectfully submits that the facts, legal authorities, and imminent risks outlined herein warrant immediate federal intervention. The pattern of retaliation, disability discrimination, and obstruction detailed above not only endangers Plaintiff's health and parental rights, but undermines the rule of law itself. In the interest of justice, protection of federally guaranteed rights, and prevention of further irreparable harm, Plaintiff prays this Court will grant the relief requested without delay.

Respectfully submitted,

6/26/2025

**/s/ Margaret Alexandra Alexander**

**Margaret Alexandra Alexander**

13898 Gerard Ct

Conroe, TX 77306

281 622 5743

maggiealex333@yahoo.com

**Pro Se Plaintiff**

# MARGARET ALEXANDRA ALEXANDER

# EMERGENCY MOTION FOR PRELIMINARY INJUNCTION

**UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF COLUMBIA**

**MARGARET ALEXANDRA ALEXANDER,**

Plaintiff,


v.


**MONTGOMERY COUNTY COMMUNITY SUPERVISION & CORRECTIONS**

**DEPARTMENT, et al.,**

Defendants.


Civil Action No.:


**PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**


Pursuant to Federal Rule of Civil Procedure 65, Plaintiff Margaret Alexandra Alexander

respectfully moves this Honorable Court for the immediate issuance of a preliminary injunction

to enjoin Defendants from engaging in further acts of retaliatory conduct, denial of disability

accommodations, and obstruction of court access—all in direct violation of Plaintiff's federally

protected rights. This motion is filed in conjunction with Plaintiff's operative Complaint for

Declaratory and Injunctive Relief, which asserts causes of action under 42 U.S.C. § 1983, Title II

of the Americans with Disabilities Act (ADA), and Section 504 of the Rehabilitation Act.

1

This relief is urgently sought to prevent irreparable harm, preserve the status quo, and protect Plaintiff's fundamental rights during the pendency of this litigation.

In support thereof, Plaintiff states as follows:

## I. INTRODUCTION

Plaintiff Margaret Alexandra Alexander is a qualified individual with a disability and a high-risk pregnancy, currently under the supervision of state officials in Montgomery County, Texas. She has initiated a federal civil rights action exposing an entrenched pattern of retaliatory conduct, willful violations of the Americans with Disabilities Act, and systemic constitutional deprivations. Within mere hours of submitting protected disclosures to the U.S. Department of Justice and the Federal Bureau of Investigation, Plaintiff was subjected to coercive contact by adverse parties, a hostile and unannounced probation visit, and a continued refusal to implement medically necessary ADA accommodations—despite repeated notice of her disability and her unborn child's in utero cardiac defect.

These events confirm not only a causal nexus between Plaintiff's protected activity and retaliatory state action, but also an escalating threat to her health, pregnancy, and federally guaranteed rights. Absent immediate injunctive relief, Plaintiff faces irreparable harm including physical endangerment, forced noncompliance, suppression of access to judicial remedy, and further constitutional injury.

## II. LEGAL STANDARD

A preliminary injunction is an extraordinary and urgent remedy, appropriate when the movant

satisfies the four-prong test set forth in *Winter v. Natural Resources Defense Council*, 555 U.S.

7, 20 (2008). Specifically, the Plaintiff must demonstrate:

1. A likelihood of success on the merits;

2. A likelihood of suffering irreparable harm in the absence of preliminary relief;

3. That the balance of equities tips sharply in the movant's favor; and

4. That the injunction is in the public interest.

Federal courts have consistently recognized that the protection of constitutional and civil rights is

among the highest public interests, and even a temporary deprivation of such rights—particularly

involving First Amendment retaliation, Fourteenth Amendment due process, or the Eighth

Amendment's protection against deliberate indifference—may satisfy the irreparable harm

prong. See *Elrod v. Burns*, 427 U.S. 347, 373 (1976) ("The loss of First Amendment freedoms,

for even minimal periods of time, unquestionably constitutes irreparable injury."); see also

*Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (noting that civil rights deprivations

constitute irreparable harm).

Where, as here, the plaintiff is disabled and seeks protection under Title II of the Americans with

Disabilities Act and Section 504 of the Rehabilitation Act, courts apply heightened scrutiny to

failures to provide timely and meaningful accommodations. A state actor's deliberate

indifference to known disability-related needs—particularly where such inaction endangers health, access to courts, or parental rights—triggers immediate federal concern. See *Duvall v. County of Kitsap*, 260 F.3d 1124, 1138–39 (9th Cir. 2001) (deliberate failure to act on accommodation requests constitutes actionable ADA violation); *Gorman v. Bartch*, 152 F.3d 907 (8th Cir. 1998) (applying Title II of the ADA to custodial settings).

Further, the public interest is unquestionably served when courts act to enjoin unlawful conduct by state actors, protect disabled litigants, and preserve access to judicial remedy. See *League of Women Voters of U.S. v. Newby*, 838 F.3d 1, 12 (D.C. Cir. 2016) ("There is generally no public interest in the perpetuation of unlawful agency action.").

Where a plaintiff is pregnant, disabled, actively litigating her innocence, and faces demonstrable retaliation by public agencies—including probation, child welfare, and law enforcement actors—federal courts have a duty to act swiftly and prevent irreparable injury to bodily health, family unity, and constitutional process.

As set forth in detail below, Plaintiff meets and exceeds all four elements of the Winter test.

## III. ARGUMENT

### A. Likelihood of Success on the Merits

Plaintiff has demonstrated a strong probability of success on the merits based on substantial factual documentation, sworn witness affidavits, medical records, statutory violations, and

4

established federal precedent. The conduct of the Defendants—each acting under color of law—reflects a pattern of constitutional and statutory violations that federal courts have consistently recognized as grounds for injunctive relief and civil rights liability. These violations include, but are not limited to:

- **Coerced Medical Seizure, ADA Retaliation, and Postpartum Cruelty Under Color of Law**

Following the death of her infant son, Plaintiff was subjected to sustained and constitutionally egregious misconduct by state actors operating under color of law. Officials explicitly discouraged her from retaining legal counsel and then subjected her to over eight hours of custodial interrogation while she was grieving, disoriented, and medically vulnerable. Throughout this period, Plaintiff was denied access to legal representation and barred from receiving comfort or presence from her husband, compounding her psychological and physical trauma.

In tandem with this coercive interrogation, officials forced Plaintiff—then 1.5 months postpartum and healing from vaginal stitches—to remain in a holding area without access to a restroom until she submitted to a nonconsensual blood draw, resulting in her urinating on herself in custody while pleading for medical relief and legal protection.

These acts collectively constitute violations of Plaintiff's rights under the Fourth Amendment (unlawful search and seizure), Fifth and Fourteenth Amendments (due process and coerced self-incrimination), Eighth Amendment (cruel and unusual punishment), and Sixth Amendment (right to counsel). They further demonstrate deliberate indifference to disability-related medical needs, in violation of Title II of the Americans with Disabilities Act, Section 504 of the Rehabilitation Act, and actionable federal claims under 42 U.S.C. §§ 1983, 1985(2), and 12203.

These events are corroborated by multiple sworn affidavits and reflect a broader pattern of ADA-based retaliation, constitutional misconduct, and institutional cruelty deliberately inflicted to impair Plaintiff's capacity to assert her legal rights.

- o **Relevant Case Law Supporting Federal Violations:**

This type of coercive and degrading treatment—especially against a grieving, postpartum, and disabled mother—is squarely prohibited by binding federal precedent:

*Rochin v. California, 342 U.S. 165 (1952):* The Supreme Court condemned forced bodily intrusion (a stomach pump) as a violation of substantive due process under the Fourteenth Amendment, establishing that "conduct that shocks the conscience" is unconstitutional. Forcing a postpartum woman to urinate on herself while demanding nonconsensual medical seizure meets and exceeds this standard.

*Payton v. New York, 445 U.S. 573 (1980):* Reinforces the Fourth Amendment's protections against warrantless searches and seizures, including bodily intrusions. A nonconsensual blood draw without warrant or exigency is a per se violation.

*Miranda v. Arizona, 384 U.S. 436 (1966):* Establishes that custodial interrogation without informing a suspect of their right to counsel or providing access to it is a violation of the Fifth and Sixth Amendments. Discouraging legal representation and continuing questioning without it is constitutionally impermissible.

*Hope v. Pelzer, 536 U.S. 730 (2002):* Clarifies that Eighth Amendment violations exist when officials act with deliberate indifference to known medical and physical vulnerabilities. Forcing a disabled, postpartum mother to suffer urinary incontinence while restrained in custody constitutes cruel and unusual punishment.

6

*Tennessee v. Lane, 541 U.S. 509 (2004):* Confirms that Title II of the ADA applies to the conduct of courts and law enforcement, and that denial of access and accommodation for individuals with disabilities—including during criminal proceedings—is federally actionable.

*United States v. Lanier, 520 U.S. 259 (1997):* Holds that constitutional rights can be enforced under 42 U.S.C. § 1983 when officials, acting under color of law, violate clearly established federal protections through coercive abuse.

- **Forced Reenactment Constituting Psychological Torture and Constitutional Violation**

Plaintiff was subjected to a coerced reenactment mere hours after the sudden death of her infant son. Law enforcement officers forced her—against her repeated verbal pleas—to use a lifeless baby doll to simulate the alleged circumstances of the death, requiring her to act as though the doll were her deceased child. This reenactment was conducted without legal counsel, medical supervision, or ADA accommodation, and resulted in such profound psychological distress that Plaintiff lost consciousness during the process. Multiple sworn affidavits attest to this incident, including witness confirmation of Plaintiff's dissociation, collapse, and visible trauma. This conduct constitutes psychological torture and violates Plaintiff's Eighth Amendment protection against cruel and unusual punishment, Fourteenth Amendment rights to due process and bodily integrity, and Title II of the Americans with Disabilities Act. No legitimate investigatory purpose can justify such dehumanizing treatment of a grieving, disabled mother within hours of experiencing the most extreme maternal loss imaginable.

- ○ **Relevant Case Law Supporting Federal Violations:**

*Hope v. Pelzer, 536 U.S. 730 (2002):* The Supreme Court held that deliberately degrading treatment that serves no penological or investigatory purpose and causes physical or

psychological harm violates the Eighth Amendment. Forcing a grieving mother to reenact her child's death with a doll while ignoring repeated pleas easily crosses this threshold.

*Rochin v. California, 342 U.S. 165 (1952):* The Court found that government conduct that "shocks the conscience" violates substantive due process. Coerced reenactment involving the simulation of a child's death within hours of loss is the definition of conscience-shocking conduct under the Fourteenth Amendment.

*Jackson v. Bishop, 404 F.2d 571 (8th Cir. 1968):* Held that psychological abuse or humiliation by state officials may constitute cruel and unusual punishment under the Eighth Amendment, even absent physical injury.

*Tennessee v. Lane, 541 U.S. 509 (2004):* Establishes that Title II of the ADA applies to all services and proceedings administered by law enforcement and courts, requiring reasonable accommodations. Denying medical and psychological accommodation during custodial trauma violates federally protected disability rights.

*Youngberg v. Romeo, 457 U.S. 307 (1982):* Confirms that individuals in state custody are entitled to reasonable protection and freedom from undue restraint, including from psychological harm, under the Fourteenth Amendment due process clause.

*Farmer v. Brennan, 511 U.S. 825 (1994):* States that deliberate indifference to a person's serious medical or psychological needs by state officials amounts to a constitutional violation. Ignoring Plaintiff's grief, disability, and pleas during the reenactment is textbook deliberate indifference.

- **Deliberate Misrepresentation and Obstruction During State-Initiated Fact Finding:**

Following Plaintiff's federal disclosures and legal filings, the Montgomery County District Attorney's Office attempted to shift blame onto prior defense counsel through a court-ordered affidavit process, rather than address the underlying Brady violations and ADA discrimination

raised in Plaintiff's petition. This redirection was later exposed by Plaintiff through expert

evidence, witness affidavits, and medical documentation, revealing that state actors—*not defense*

*counsel*—had suppressed exculpatory forensic reports, violated ICPC protocol, and facilitated

retaliatory supervision. This coordinated misrepresentation constitutes fraud on the court under

Rule 60(d)(3), a violation of Plaintiff's Fourteenth Amendment due process rights, and

obstruction of justice under 42 U.S.C. § 1985(2).

- **Malicious Prosecution and Double Jeopardy Triggered by Willful Suppression of Exculpatory Medical Evidence:**

State prosecutors, acting under color of law, pursued a second indictment against Plaintiff

despite possessing clear exculpatory medical documentation—including expert forensic reports,

postmortem analyses, and laboratory-confirmed pathology—proving that the alleged cause of

death was factually and scientifically false. This willful suppression of material evidence

constitutes a *Brady* violation, malicious prosecution, and a flagrant breach of Plaintiff's Fifth

Amendment protections against double jeopardy. The conduct further implicates the Due Process

Clause of the Fourteenth Amendment and gives rise to liability under *Mooney v. Holohan*, 294

U.S. 103 (1935), and *Hartman v. Moore*, 547 U.S. 250 (2006).

- **Coercive Plea Negotiations and Abuse of Process (42 U.S.C. § 1983; 8th & 14th Amendments):**

Defendants orchestrated plea negotiations while Plaintiff was medicated, grieving the sudden

loss of her child, and unrepresented by competent counsel. During this period of extreme

vulnerability, Plaintiff was coerced into waiving rights based on false, suppressed, and

scientifically discredited forensic narratives. These actions constitute egregious abuse of process,

9

violate due process under the Fourteenth Amendment, and amount to psychological punishment without adjudication—triggering Eighth Amendment protections.

*See Brady v. United States*, 397 U.S. 742 (1970); *Lee v. Mississippi*, 332 U.S. 742 (1948).

- **First Amendment Retaliation Following DOJ/FBI Disclosures (42 U.S.C. § 1983):**

Within hours of Plaintiff submitting disclosures to the U.S. Department of Justice and Federal Bureau of Investigation, Defendants initiated unscheduled, coercive, and procedurally irregular probation visits—despite no prior noncompliance. This timing raises an unambiguous inference of retaliatory animus for protected speech and whistleblowing activity, in violation of the First and Fourteenth Amendments.

*See Gagliardi v. Village of Pawling*, 18 F.3d 188 (2d Cir. 1994).

- **Witness Suppression, Retaliation, and Breach of Confidentiality (42 U.S.C. § 1985(2)):**

Defendants unlawfully disseminated sealed affidavits from a minor witness to an adverse party— who is simultaneously the complainant and alleged abuser. This egregious breach of confidentiality not only exposed the child to retaliation but also signaled to other material witnesses that participation in Plaintiff's defense would result in adverse consequences. On multiple occasions, witnesses traveled to testify on Plaintiff's behalf, only for the proceedings to be inexplicably canceled or rescheduled without notice or justification—further deterring participation and chilling testimony.

This conduct constitutes a coordinated pattern of material witness suppression, judicial sabotage, and obstruction of justice in violation of *42 U.S.C. § 1985(2)* and constitutional guarantees of due process and access to courts.

See *Haddle v. Garrison*, 525 U.S. 121 (1998).

- **Fraud on the Court and Systemic ADA Violations (Rule 60(d)(3); ADA Title II):**

Court personnel and judicial officers knowingly allowed the concealment of exculpatory

documents, ignored pending motions, and failed to act on Plaintiff's repeated ADA

accommodation requests—despite formal physician documentation. This constitutes not only

procedural fraud but a systemic denial of access to the courts in violation of Title II of the ADA

and due process.

See *Tennessee v. Lane*, 541 U.S. 509 (2004).

- **ADA and Rehabilitation Act Discrimination via Deliberate Indifference (42 U.S.C. §**
  **12132; 29 U.S.C. § 794):**

Despite receiving written, physician-supported notice of Plaintiff's autism diagnosis and high-

risk pregnancy with a fetal heart defect, Defendants repeatedly failed to provide reasonable

accommodations—while simultaneously escalating procedural burdens, physical demands, and

exposure to stress. This pattern of indifference violates federal mandates under the ADA and

Rehabilitation Act.

See *Duvall v. County of Kitsap*, 260 F.3d 1124 (9th Cir. 2001); *Alexander v. Choate*, 469 U.S.

287 (1985).

- **ADA Retaliation Clause Violations (42 U.S.C. § 12203):**

After notifying officials of her federally protected diagnosis and requesting accommodations,

Plaintiff was targeted through intensified oversight, threats of revocation, and the removal of her

children. These acts were not neutral but in retaliation for invoking federal disability rights,

constituting a separate and standalone violation under ADA Title V.

See *42 U.S.C. § 12203*.

- **Interstate Custodial Interference and ICPC Violations (42 U.S.C. §§ 671(a)(15), 675(5); 14th Amendment):**

DFPS and collaborating state entities executed unauthorized interstate transfers of Plaintiff's children—without court orders, ICPC compliance, or lawful termination of parental rights. These removals nullified federally guaranteed reunification services and violated Plaintiff's Fourteenth Amendment right to family integrity. The pattern of concealment and trafficking across state lines also raises serious federal jurisdictional implications under child protection statutes.

While certain violations occurred in the course of Plaintiff's habeas corpus proceedings, the harm described herein stems not from the outcome of those proceedings, but from an ongoing pattern of federally actionable misconduct—rooted in ADA discrimination, due process violations, and retaliatory acts under color of law. These claims are independent of the habeas review itself and seek prospective injunctive relief and civil rights remedies under 42 U.S.C. §§ 1983, 1985(2), and the ADA.

In Tennessee v. Lane, 541 U.S. 509 (2004), the Supreme Court affirmed that Title II of the ADA applies squarely to cases where a disabled individual is denied meaningful access to court proceedings. Plaintiff's autism diagnosis and high-risk pregnancy—both documented—have been systematically disregarded by Defendants despite repeated requests for accommodations, rendering access to justice illusory. This brings Plaintiff's case squarely within the protection of Lane.

In *Helling v. McKinney*, 509 U.S. 25 (1993), the Supreme Court recognized that exposure to future serious medical harm—particularly where state custody or supervision is involved—constitutes an actionable Eighth Amendment violation. Here, Plaintiff's unborn child has a documented heart defect, and the stress, coercion, and denial of accommodations inflicted by Defendants materially increase the likelihood of catastrophic pregnancy complications. This satisfies both *Winter* and *Helling*'s threshold for irreparable harm.

Moreover, in Bounds v. Smith, 430 U.S. 817 (1977), the Court held that meaningful access to the courts is a fundamental right guaranteed by the Constitution. Plaintiff's pending habeas proceedings and federal civil rights claims are being actively undermined through coercion, sealed affidavit breaches, and denial of assistance—amounting to obstruction of her right to judicial redress and triggering Bounds-level constitutional scrutiny.

In Plyler v. Doe, 457 U.S. 202 (1982), the Supreme Court emphasized that the Equal Protection Clause protects the dignity and rights of vulnerable children—even where they are not the formal parties to litigation. Defendants' actions have placed Plaintiff's minor children in hazardous placements, ignored known threats, and weaponized custody procedures to retaliate against protected filings. These actions endanger both family integrity and the welfare of minor witnesses, raising grave Plyler-level equal protection concerns.

These allegations are not speculative—they are supported by a cohesive evidentiary record and rooted in binding legal standards. Plaintiff has presented a prima facie case that Defendants have collectively and deliberately engaged in unlawful retaliation, disability-based discrimination,

procedural sabotage, and endangerment of minor children. These facts, combined with the compelling case law cited above, support a clear likelihood of prevailing on the merits of her claims under 42 U.S.C. § 1983, the ADA, and the Rehabilitation Act.

Defendants have engaged in a pattern of retaliatory conduct against Plaintiff for asserting protected rights under the ADA, including coercive plea negotiations, denial of accommodations, and intimidation through custody-related interference — each independently actionable under 42 U.S.C. § 12203.

This case presents the rare convergence of systemic ADA retaliation, procedural sabotage, and deliberate medical cruelty, demanding this Court act not only as adjudicator, but as federal safeguard against cascading institutional failure.

## B. Irreparable Harm

Plaintiff has demonstrated a clear and imminent threat of irreparable harm warranting immediate injunctive relief. The nature of the harm at issue—physical, constitutional, and procedural— cannot be redressed through monetary compensation and falls squarely within the category of injury courts have recognized as irreparable under *Winter v. NRDC*, 555 U.S. 7 (2008).

These events—particularly the coerced medical seizure and psychologically abusive reenactment—have inflicted lasting physical and psychological trauma on Plaintiff, the severity of which cannot be remedied by monetary damages. Without federal intervention, Plaintiff remains at imminent risk of further retaliatory, unconstitutional conduct by the same actors under

color of law. The nature of these harms—intimately tied to Plaintiff's dignity, bodily autonomy,

mental health, and parental status—constitute classic forms of irreparable injury recognized

under federal law.

Specifically, Plaintiff faces:

- **A medically documented risk of miscarriage and severe pregnancy complications**,
  including harm to a fetus diagnosed with a congenital heart defect. The Defendants'
  ongoing refusal to accommodate Plaintiff's pregnancy-related limitations—despite clear
  medical notice—exposes her to life-threatening danger. Federal courts have consistently
  recognized that denial of necessary medical accommodations to disabled or pregnant
  individuals constitutes irreparable harm. See *Duvall v. County of Kitsap*, 260 F.3d 1124
  (9th Cir. 2001).

- **Persistent exposure to coercion, harassment, and psychological trauma** by state
  officials, including unannounced and hostile probation visits, improper surveillance, and
  retaliatory threats—all timed in proximity to Plaintiff's protected legal activity. These
  actions inflict ongoing emotional and physical harm, and are inherently non-
  compensable.

- **Unlawful obstruction of access to post-conviction judicial relief**, including
  interference with a pending habeas corpus proceeding substantiated by newly discovered
  forensic evidence and expert opinions. Any impairment of the right to judicial redress—
  especially where constitutional violations and wrongful conviction are at stake—
  constitutes a per se irreparable injury. See *Elrod v. Burns*, 427 U.S. 347, 373 (1976).

- **Endangerment and retaliation against minor witnesses**, including the unlawful disclosure of sealed affidavits and threats made by individuals with access to those protected records. The exposure of children to harm in a federal civil rights context intensifies the level of urgency and elevates this case beyond standard injunctive considerations.

This is not an isolated occurrence but part of an ongoing pattern of federally actionable misconduct, implicating multiple agencies acting under color of law in violation of the Plaintiff's ADA rights, constitutional guarantees, and statutory protections under 42 U.S.C. §§ 1983 and 1985.

These harms are neither abstract nor speculative—they are unfolding in real time and supported by extensive evidentiary documentation. Without immediate federal intervention, Plaintiff and her children face compounding threats to their physical safety, family integrity, and constitutional rights. Under *Winter* and subsequent federal precedent, the irreparability requirement is unequivocally satisfied.

## C. Balance of Equities

The balance of equities overwhelmingly favors Plaintiff. No legitimate government interest justifies the use of psychological torture, denial of medical care, or coercive bodily searches against a grieving, disabled mother. Conversely, the denial of injunctive relief would effectively authorize continued trauma, constitutional violations, and retaliation against Plaintiff for asserting her federally protected rights.

Plaintiff does not seek to disrupt legitimate government operations, but merely to halt ongoing violations of federal rights—including her rights to due process, familial integrity, medical accommodation, and judicial access. The requested relief is narrowly tailored: it demands no more than adherence to already existing legal obligations under the U.S. Constitution, the Americans with Disabilities Act, and the Rehabilitation Act.

By contrast, the harm to Plaintiff—a disabled, high-risk pregnant woman facing active coercion, medical endangerment, and retaliation for protected federal activity—is both grave and imminent. The denial of accommodations and retaliatory targeting jeopardize her life, liberty, and parental rights. Preventing these abuses serves not only Plaintiff's interests, but the public's interest in lawful government conduct and the constitutional protection of vulnerable populations.

Federal courts routinely find the equities favor injunctions where a party seeks to enforce constitutional or statutory guarantees, particularly in cases involving medical harm, disability discrimination, or retaliation for protected legal action. No credible harm will befall Defendants from compliance with their legal obligations; their only burden is to cease violating federal law.

Accordingly, the equities resoundingly support immediate injunctive relief.

In light of the complete failure of local and state oversight mechanisms to enforce federal protections — despite direct notice and compelling evidence — Plaintiff has no adequate remedy

at law and is entitled to immediate federal intervention under the Supremacy Clause and ADA enforcement framework.

## D. Public Interest

The public interest overwhelmingly supports granting injunctive relief.

The public interest is not served by permitting government officials to engage in conduct that shocks the conscience, especially toward medically vulnerable or disabled citizens. Preventing further acts of retaliation, psychological abuse, and ADA-based discrimination is not only consistent with the law—it is imperative for maintaining public trust in lawful governance. This Court's intervention will signal that such practices have no place in a constitutional democracy.

Preventing retaliation against whistleblowers, safeguarding the constitutional rights of disabled and pregnant individuals, and protecting the integrity of the judicial process are not only urgent public imperatives—they are foundational to a functioning democracy.

Plaintiff's case involves active interference with post-conviction judicial proceedings, unlawful disclosure of sealed testimony by minors, and the systematic denial of federally mandated ADA accommodations. These violations strike at the heart of federal oversight, disability rights, and procedural due process.

Courts consistently recognize that the public interest is served when government entities are held accountable to constitutional and statutory mandates. See *Nken v. Holder*, 556 U.S. 418, 436

(2009) ("[T]here is always a public interest in ensuring that the law is followed."). Here, the requested injunction seeks to prevent further unlawful conduct, uphold the rule of law, and protect the rights of both the Plaintiff and her minor children.

In a case involving life-threatening medical conditions, minor witness safety, and retaliatory misuse of public authority, the public interest not only favors—but demands—immediate federal intervention.

The balance of equities tips sharply in Plaintiff's favor, as the irreparable harm to her constitutional and familial rights outweighs any governmental interest in continued delay or concealment. Moreover, the public interest is served by enforcing compliance with federal child protection laws, disability accommodations, and civil rights safeguards — not by protecting those who violate them.

## IV. REQUEST FOR RELIEF

**WHEREFORE, Plaintiff respectfully requests that this Court:**

1. **Issue a preliminary injunction** enjoining Defendants—and all persons acting in concert, under color of law, or within supervisory capacity—from committing, facilitating, or permitting any further acts of retaliation, intimidation, coercion, or harassment against Plaintiff or her minor witnesses. This includes, but is not limited to:

• Conducting unannounced site visits, surveillance, or coercive compliance checks;

• Disclosing, disseminating, or otherwise mishandling sealed affidavits, confidential witness materials, or protected medical information;

• Denying, delaying, obstructing, or retaliating against any request for ADA accommodations, pregnancy-related medical accommodations, or trauma-informed procedural protections as required under federal law.

2. **Order immediate compliance** by all named and affiliated Defendants—including supervisory, prosecutorial, probationary, judicial, and child welfare agencies—with the following federal protections and statutory mandates:

• Title II of the Americans with Disabilities Act,

• Section 504 of the Rehabilitation Act of 1973,

• Titles IV-B and IV-E of the Social Security Act, and

• Constitutional guarantees under the First, Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution, including but not limited to rights involving:

– medical privacy and safety,

– access to legal counsel and judicial remedy,

– freedom from coerced testimony,

– family integrity, and

– protection from cruel and unusual punishment.

3. **Direct the immediate preservation** of all evidence and records—digital or physical— related to the conduct giving rise to this motion, including but not limited to:

• Internal agency communications;

• Case files and investigatory notes concerning Plaintiff or her minor children;

20

• Records pertaining to ICPC placements, ADA accommodation requests, witness management, and prosecutorial decision-making.

4. **Grant such other and further relief** as this Court deems just, equitable, and necessary to prevent continuing irreparable harm, ensure the preservation of constitutional integrity, and secure the enforcement of Plaintiff's rights under federal law.

To the extent this Court denies injunctive relief or fails to address the imminent harm, Plaintiff expressly preserves all rights under the doctrine of judicial estoppel to bar Defendants from later denying the urgency or legality of the issues raised herein.

## V. CONCLUSION

Plaintiff has demonstrated a clear and compelling likelihood of success on the merits, a substantial and ongoing risk of irreparable harm, and that both the balance of equities and public interest weigh overwhelmingly in favor of immediate injunctive relief. Where constitutional violations, disability-based discrimination, and retaliatory abuse by state actors intersect, the judiciary is not merely authorized—but obligated—to intervene decisively.

In *Elrod v. Burns*, 427 U.S. 347, 373 (1976), the Supreme Court held that "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." Similarly, *Gorman v. Bartch*, 152 F.3d 907 (8th Cir. 1998), affirmed the full applicability of the ADA to custodial and supervisory government functions, and *Duvall v. County of Kitsap*, 260 F.3d 1124 (9th Cir. 2001), clarified that deliberate indifference to known accommodation needs is an actionable violation of federal civil rights. In *Gagliardi v. Village of*

*Pawling*, 18 F.3d 188 (2d Cir. 1994), the court recognized that retaliatory acts by local government in response to constitutionally protected activity give rise to relief under 42 U.S.C. § 1983.

Additionally, *Tennessee v. Lane*, 541 U.S. 509 (2004), reaffirmed that Title II of the ADA protects disabled individuals' access to fundamental rights, including access to courts, while *Hope v. Pelzer*, 536 U.S. 730 (2002), emphasized that conduct violating "clearly established constitutional rights" cannot be shielded by qualified immunity. And in *Monell v. Department of Social Services*, 436 U.S. 658 (1978), the Court made clear that municipalities may be held liable when a policy, practice, or custom results in the deprivation of federally protected rights.

This motion does not seek preferential treatment—it seeks constitutional triage. Plaintiff, a disabled, high-risk pregnant mother, has been denied medical safety, judicial access, family integrity, and fundamental due process by state actors operating with calculated indifference and retaliatory intent. These are not isolated incidents—they are part of a demonstrable pattern of systemic abuse that warrants immediate federal oversight.

The law is clear, the violations are ongoing, and this Court's intervention is essential—not merely to preserve Plaintiff's rights, but to uphold the rule of law itself.

Respectfully submitted,

**/s/ Margaret Alexandra Alexander**

Margaret Alexandra Alexander

Pro Se Plaintiff

13898 Gerard Ct

Conroe, TX 77306

(281) 622-5743

maggiealex333@yahoo.com

Dated: June 26, 2025                    6/26/25

_____

DECLARATION UNDER PENALTY OF PERJURY

I, Margaret Alexandra Alexander, declare under penalty of perjury under the laws of the United States of America that the foregoing motion and all factual representations contained herein are true and correct to the best of my knowledge, information, and belief.

Executed on June 26, 2025        6/26/25

_____

**Margaret Alexandra Alexander**